**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH HEYWARD** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 20-530** |
| | : | |
| **CITY OF PHILADELPHIA,** *et al.* | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                    **September 15, 2020**

Joseph Heyward pleaded guilty in Philadelphia County over seventeen years ago to second degree murder, aggravated assault, and arson arising from a house fire. The Philadelphia Court of Common Pleas sentenced him to life in prison without parole. After exhausting direct appeals, Mr. Heyward repeatedly moved for post-conviction relief including (for the third time) fifteen years later in 2018 arguing actual innocence and seeking DNA testing on a lighter used in the fire. He never challenged the lighter before then; he instead pleaded guilty. There is no newly discovered evidence and no basis to believe the lighter would exculpate him. But the City of Philadelphia's Police Department lost the lighter by 2018. Mr. Heyward now *pro se* sues the City and two of the arresting officers arguing their loss of this lighter evidence allegedly necessary to prove his actual innocence violated his procedural due process rights. The Pennsylvania Post-Conviction Relief Act court denied his third petition for post-conviction relief after he filed this case. The City and its officers now move to dismiss arguing we lack subject matter jurisdiction under *Rooker-Feldman* and Mr. Heyward otherwise cannot state a civil rights claim against them. We disagree as to our subject matter jurisdiction under *Rooker-Feldman* but agree Mr. Heyward has not pleaded a civil rights claim against the City and its two officers. We grant Mr. Heyward leave to timely amend if he can plead a claim within our limited subject matter jurisdiction challenging the officers' individual involvement in his claim and the City's supervisory liability.

### I.   Alleged *pro se* facts.

A Philadelphia house fire in October 2001 killed one person and injured six others including a Philadelphia fireman.[1] The Philadelphia Fire Department determined arson as the cause of the fire after finding liquid accelerant and a cigarette lighter on the first floor of the house.[2] Philadelphia Police Detective John Harkins and Officer John Taggart investigated the fire. Detective Harkins interviewed witnesses who reported seeing Mr. Heyward flicking a lighted cigarette toward the house before leaving the area.[3]

Police obtained a warrant for Mr. Heyward's arrest and, while being questioned by police, Mr. Heyward confessed to Detective Harkins, including to using a cigarette lighter to start the fire.[4] On May 7, 2003, Mr. Heyward pleaded guilty in state court to murder, arson, risking a catastrophe, and aggravated assault.[5] Following his guilty plea, the Philadelphia County Court of Common Pleas convicted him of second degree murder, arson, and six counts of aggravated assault.[6] The court sentenced Mr. Heyward to life imprisonment without parole.

Mr. Heyward then filed in state court (1) an unsuccessful direct appeal from the judgment of sentence; (2) a motion under the Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. § 9541, *et seq.*, dismissed as frivolous after appointed counsel moved to withdraw and filed a no-merit letter under *Commonwealth v. Finley*[7]; (3) a second PCRA motion denied as untimely, a decision affirmed on appeal when he failed to file briefs; and (4) a third PCRA motion seeking DNA testing.[8] The third PCRA motion seeking DNA testing gives rise to the issue today.

### *Mr. Heyward's post-conviction Motion for DNA testing in state court.*

On March 16, 2018, fifteen years after his sentencing, Mr. Heyward moved the state court for forensic DNA testing under 42 Pa. Cons. Stat. Ann. § 9543.l.[9] Mr. Heyward intended to

demonstrate his actual innocence of the crimes to which he pleaded guilty through DNA testing of the lighter and other physical evidence.

Pennsylvania's General Assembly allows an individual convicted of a criminal offense in a Pennsylvania state court to move "the sentencing court at any time for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction."[10]  The convicted individual must explain, "after review of the record of the applicant's trial, . . . or after review of the record of the applicant's guilty plea there is a reasonable probability, that the testing would produce exculpatory evidence" establishing "the applicant's actual innocence of the offense for which the applicant was convicted."[11]  Mr. Heyward moved under the statute for DNA testing "of any evidence recovered from [his] criminal case, including the cigarette lighter …."[12]

On July 10, 2019, Mr. Heyward's attorney advised him the lighter sought to be DNA tested could not be located by the Philadelphia Police Department.[13] Mr. Heyward's counsel moved to withdraw, filing a *Finley* no-merit letter on November 20, 2019.[14]  The Philadelphia Court of Common Pleas ultimately dismissed Mr. Heywood's PCRA motion for DNA testing on February 23, 2020.[15]

### *Mr. Heyward files a civil rights action during the pending PCRA action.*

Despite the pending PCRA motion seeking DNA testing, Mr. Heywood filed a civil rights action before us on October 7, 2019 alleging he has a "state created liberty interest that only requires him to demonstrate his actual innocence in the context of post-conviction proceedings with appropriate evidence" and the loss of the lighter and other evidence in his criminal case prejudiced his attempt to show his actual innocence.[16]  He alleged a deprivation of "adequate

access to courts" in violation of the Eighth Amendment, a violation of procedural due process, a *Brady*[17] violation, and "government interference and a blatant miscarriage of justice."[18]

We dismissed Mr. Heyward's first *pro se* complaint on January 8, 2020 seeking to proceed *in forma pauperis* after screening it under 28 U.S.C. § 1915(e)(2)(B)(ii).[19]   In dismissing Mr. Heyward's claims against the City and its Police Department in early January, we explained: "Mr. Heyward is not seeking merely the right to obtain DNA testing. To the contrary, he alleges the loss of exculpatory evidence forms the basis for his claims.  He cites *Brady* as providing a basis for his civil rights claim. His demand for money damages presumes DNA testing on the lighter would yield exculpatory evidence.  In short, Mr. Heyward's success in this action necessarily implies the invalidity of his convictions, which the state court has not found.  Mr. Heyward's claims are not cognizable as yet in this Court."[20]

We did not permit Mr. Heyward to file an amended complaint but dismissed his claims without prejudice to him filing a new lawsuit in the event the state court vacates his conviction. We have no record a Pennsylvania state court vacated Mr. Heyward's conviction.

### Mr. Heyward files this second civil rights action during the pending PCRA action.

Mr. Heyward then turned around and filed this case on January 30, 2020 despite the fact nothing changed in the state court after our January 8, 2020 dismissal Order and the state court had yet to dismiss his PCRA action. In this second action, he alleged the City, the Philadelphia Police Department, Detective Harkins, and Officer Taggart deprived him of his due process rights under the Fifth and Fourteenth Amendments by losing the lighter used in the crimes preventing him from testing the DNA on the lighter.[21] He seeks $500,000 in compensatory damages and $250,000 in punitive damages.

4

After Mr. Heyward filed this second civil rights action, the state court dismissed his PCRA action on February 13, 2020.[22]  The parties offer no reason for this dismissal and it appears there is no written opinion.  Mr. Heyward did not appeal. The state court's denial of his third PCRA petition is a final judgment.

We dismissed Mr. Heyward's first civil rights action filed in October 2019 because of the pending PCRA action in state court.  Although Mr. Heyward filed his second civil rights action again during the pendency of this PCRA action, the state court's subsequent dismissal creates a different procedural landscape. We are no longer awaiting a decision from the state court.

## II.    Analysis

The City, Detective Harkins, and Officer Taggart move to dismiss the complaint for lack of subject matter jurisdiction arguing we lack subject matter jurisdiction under the *Rooker-Feldman* doctrine and for failure to state a claim against the individual officers and the City.[23] Mr. Heyward responded with a "Declaration" largely reiterating the allegations of his complaint and arguing Defendants violated his due process rights because they failed to afford him notice and hearing before the "deprivation of [his] [s]ignificant [p]roperty [i]nterest" "[n]ot only prohibiting [him] from said demonstration of actual innocence with appropriate evidence, but depriving [him] of his state-created property interest without procedural due process of law."[24]

### A.    The *Rooker-Feldman* doctrine does not apply.

Defendants first argue we lack subject matter jurisdiction over Mr. Heyward's complaint under the *Rooker-Feldman* doctrine.[25] The "narrow doctrine . . . applies only in 'limited circumstances,'  . . . and is restricted to cases where four requirements are met: (1) the federal plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state-court

judgment, (3) that judgment issued before the federal suit was filed, and (4) the plaintiff invites the district court to review and reject the state-court judgment."[26]

Mr. Heyward alleges he is not challenging the state court's decision, but the "unconstitutional . . . violation of his Fifth and Fourteenth Amendment procedural due process rights . . .."[27] He alleges Defendants, acting under color of state law, lost the lighter in his criminal case (years after his guilty plea and sentence) depriving him of his procedural due process rights to DNA testing which he argues applies in the PCRA process.[28]

Three of the four *Rooker-Feldman* requirements are not met here: Mr. Heyward does not complain of injuries caused by a state court judgment; the judgment did not issue before the filing of this action; and he does not invite us to review and reject a state court judgment. Mr. Heyward challenges the inability to have the DNA tested on the lighter because Defendants cannot locate it. His motion for DNA testing under the Pennsylvania statute predated the state court's dismissal of his third PCRA motion.

Mr. Heyward's case is distinguishable from *Walker v. Williams* cited by the City.[29]  In *Walker*, the plaintiff brought a claim against the Philadelphia District Attorney alleging a deprivation of his procedural due process rights guaranteed by the Fourteenth Amendment because the District Attorney denied him access to evidence for DNA and testing. The PCRA court denied his motion for DNA testing as barred by the statute of limitations.  Mr. Walker then filed a civil rights action.  Mr. Walker challenged only the decision of the PCRA court and the refusal of Defendant to relinquish the requested evidence for DNA testing. The district court dismissed Mr. Walker's complaint finding "whether Plaintiff is challenging the state court decision applying the statute of limitations to bar his PCRA petition, or the application of the Pennsylvania post-

conviction DNA statute to his case, the Court is still without jurisdiction under the *Rooker-Feldman* Doctrine to review Plaintiff's claims."[30]

Unlike *Walker*, Mr. Heyward did not have the ability to avail himself of Pennsylvania's DNA testing statute because the lighter cannot be located and is presumably lost.  The losing of evidence post-conviction is at issue today, not the state court's decision applying the DNA statute. The *Rooker-Feldman* doctrine does not apply.  The City does not argue, and we see no other basis to decline subject matter jurisdiction over his civil rights claim.  We deny the Defendants' subject matter jurisdiction argument.

**B.  Mr. Heyward fails to state a claim against the individual officers**.[31]

Mr. Heyward sues Detective Harkins and Officer Taggart for violating his civil rights under 42 U.S.C. § 1983.[32]  To prevail on his civil rights claim, Mr. Heyward must show that a person (or persons), acting under color of law, deprived him of a constitutional right.[33]  Detective Harkins and Officer Taggart move to dismiss Mr. Heyward's complaint for failing to allege their personal involvement in the alleged due process violation.  Mr. Heyward did not respond to this argument.

To establish a civil rights claim against Detective Harkins and Officer Taggart in their individual capacities, Mr. Heyward must allege their "personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*."[34] Mr. Heyward can show personal involvement with allegations of "personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity."[35]

Mr. Heyward fails to allege the personal involvement of either Detective Harkins or Officer Taggart in anything to do with the missing lighter. Mr. Heyward alleges Detective Harkins' and Officer Taggart's presence at the crime scene on October 19, 2001; Detective Harkins

"interviewed several witnesses" and later received a confession from Mr. Heyward in which "a lighter is mentioned as being the instrument used to cause the fire …"; and Detective Harkins read Mr. Heyward's confession "under oath."[36]   Mr. Heyward does not allege Detective Harkins' or Officer Taggart's personal involvement in losing the lighter apparently years later.

In his response to Defendants' motion to dismiss, Mr. Heyward attaches a letter from the Philadelphia Police Department responding to a request to locate the lighter.  Police Department records show the Department assigned "property receipt 9001071 on the lighter and in the custody of Police Officer John Taggart #1888 of the Crime Scene Unit on 12-09-2002. There is no record of it being received at the Evidence Custodian Unit."[37]   While this suggests Officer Taggart at one point had custody of the lighter, there are no allegations of his or Detective Harkins personally directing the lighter to be lost or having actual knowledge of the lighter being lost. We must dismiss unless Mr. Heyward can plead facts of Detective Harkins and Officer Taggart personally involved in his alleged deprivation of due process.

We grant Defendants' motion without prejudice for Mr. Heyward to timely amend his complaint to allege facts of Detective Harkins' or Officer Taggart's personal involvement in losing the lighter, either through personally directing the lighter to be lost or having actual knowledge to the lighter being lost and acquiescing.

### C.  Mr. Heyward fails to state a civil rights claim against the City.

Mr. Heyward also sues the City for losing the lighter years after his guilty plea and conviction.  The City moves to dismiss.  We agree with the City.

In *Monell v. New York City Department of Social Services*,[38] the Supreme Court held a only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the

government as an entity is responsible under § 1983."[39] "A government policy or custom can be established in two ways. Policy is made when a 'decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action' issues an official proclamation, policy, or edict. A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanently and well-settled' as to virtually constitute law."[40] To satisfy the pleading standard, Mr. Heyward "must identify a custom or policy, and specify what exactly that custom or policy was."[41] The established custom or policy . . . "must be the 'moving force' behind the injury alleged."[42]

An allegation of a policy or custom is not sufficient to survive a motion to dismiss; Mr. Heyward must "also allege that the policy or custom was the 'proximate cause' of his injuries."[43] Mr. Heyward "may do so by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation he alleges."[44]

Mr. Heyward fails to identify a custom or policy depriving him of procedural due process. He pleads no facts of a municipal custom or policy or a decisionmaker with "final authority to establish a municipal policy" or a "course of conduct … so permanently and well-settled as to virtually constitute law," or the official custom or policy caused this alleged deprivation of due process. We grant the City's motion to dismiss the *Monell* claim without prejudice to allow Mr. Heyward to amend his complaint to allege a *Monell* claim if he can do so.

### III.    Conclusion

We enjoy subject matter jurisdiction. We grant Defendants' motion to dismiss finding Mr. Heyward fails to state a claim for individual liability against Detective Harkins and Officer Taggart and a municipal liability claim against the City of Philadelphia with leave to timely amend if he can plead such claims.

---

[1] ECF Doc. No. 2 at 12, ¶¶ 1-6.

[2] *Id.* at ¶¶ 5-6.

[3] *Id.* at ¶¶ 7-8.

[4] *Id.* at ¶¶ 13-14.

[5] *Commonwealth v. Heyward*, No. CP-51-CR-1001841-2002 (Phila. Ct. of Common Pleas) ("docket entries").  The docket entries show Mr. Heyward pleaded guilty to these crimes.

[6] ECF Doc. No. 2 at 12, ¶ 18.

[7] 550 A.2d 213 (Pa. Super. Ct. 1988). *Finley* and *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988) "establish the procedure for withdrawal of court-appointed counsel in collateral attacks on criminal convictions. Prior to withdrawal, counsel must conduct an independent review of the record and prepare a 'no-merit' letter detailing the nature of the review that counsel conducted, listing the issues the petitioner wants to raise, and explaining why such issues lack merit." *Commonwealth v. Staton*, 120 A.3d 277, 294 (Pa. 2015).

[8] *See* Docket entries, *Commonwealth v. Heyward*, No. CP-51-CR-1001841-2002. Under Pennsylvania law, any post-conviction petition, regardless of the title of the document filed, is evaluated under the PCRA. *Williams v. Erie Cnty. Dist. Attorney's Office*, 848 A.2d 967, 969 (Pa. Super. Ct. 2004) (citations omitted).

[9] ECF Doc. No. 2 at 13, ¶ 20.

[10] 42 Pa. Cons. Stat. Ann. § 9543.1(a).

[11] *Id.* at § 9543.1(a)(6)(i).

[12] ECF Doc. No. 2 at 13, ¶ 21.

[13] *Id.* at ¶ 22; ECF Doc. No. 13 at 5-6.

[14] ECF Doc. No. 2 at 13, ¶¶ 23-26.

[15] *See* Docket entries, *Commonwealth v. Heyward*, No. CP-51-CR-1001841-2002.

[16] *Heyward v. City of Phila., et al.*, No. 19-5469 ("*Heyward I*").  Mr. Heyward initially filed his complaint in the United States District Court for the Western District of Pennsylvania which ordered the transfer of the action to our court.

[17] Under *Brady v. Maryland*, 373 U.S. 83 (1963), the United States in a criminal prosecution "must disclose evidence that is (1) material to either guilt or punishment and (2) favorable to the

accused." *United States v. Bansal*, 663 F.3d 634, 670 (3d Cir. 2011) (citing *United States v. Bagley*, 473 U.S. 667, 674 (1985)). "A *Brady* violation occurs if the government does not turn over such evidence and its failure to do so causes prejudice to the defendant." *Id.* (quoting *Strickler v. Greene*, 527 U.S. 263, 281–282 (1999)).

[18] *Heyward I* at ECF Doc. No. 4.

[19] *Id.* at ECF Doc. No. 13.

[20] *Id.* at 4-5 (footnote omitted).

[21] On March 4, 2020, we dismissed the Philadelphia Police Department with prejudice because it is not a proper defendant under 42 U.S.C. § 1983.  ECF Doc. No. 9 at ¶ 6, n.2.

[22] *See* Docket entries, *Commonwealth v. Heyward*, No. CP-51-CR-1001841-2002.

[23] ECF Doc. No. 12.

[24] ECF Doc. No. 13.  The City and its officers do not argue, and we do not speculate, as to whether Mr. Heyward could ever proceed on a civil rights claim arising from lost evidence long after the conviction and final judgment.  Our preliminary research could not uncover a similar claim but we leave this argument for another day if necessary.

[25] So named after two Supreme Court cases *Rooker v. Fid. Tr. Co*., 263 U.S. 413 (1923) and  *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). "The *Rooker-Feldman* doctrine deprives a District Court of jurisdiction to review, directly or indirectly, a state court decision." *Kajla v. Cleary*, --- F. App'x ---, No. 19-1373, 2020 WL 4218113, at *1 (3d Cir. July 23, 2020).

[26] *Geness v. Cox*, 902 F.3d 344, 360 (3d Cir. 2018) (internal citations omitted).

[27] ECF Doc. No. 2 at 15.

[28] *Id.* at 14-15.

[29] No. 15-1567, 2016 WL 687186 (E.D. Pa. Feb. 18, 2016), *aff'd*, 653 F. App'x 84 (3d Cir. 2016).

[30] *Id.* at * 3.

[31] Federal Rule of Civil Procedure 12(b)(6) requires a complaint to state a claim upon which relief can be granted. Fed. R. Civ. P. (12)(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Bos. MBS ARMT 2005-8*, 806 F. App'x 101, 104,  n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim has facial plausibility when the plaintiff

pleads factual content . . . allow[ing] the court to draw the reasonable inference . . . the defendant is liable for the misconduct alleged." *Robert W. Mauthe M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility . . . a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Mauthe*, 806 F. App'x at 152 (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878-79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[32] Section 1983 provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .."

[33] *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020).

[34] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing *Parrott v. Taylor*, 451 U.S. 527, 537 n.3 (1981)).

[35] *Id.*

[36] ECF Doc. No. 2 at ¶¶ 3, 7, 13, 16.

[37] ECF Doc. No. 13 at 6.

[38] 436 U.S. 658 (1978).

[39] *Id.* at 694.

[40] *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009) (citation omitted); *see also Roman v. City of Newark,* 914 F.3d 789, 798 (3d Cir. 2019) (defining "policy" and "custom").

---

[41] *McTernan*, 564 F.3d at 658 (citation omitted).

[42] *Lesher v. Zimmerman*, --- F. App'x ---, No. 19-1663, 2020 WL 4581604, at *3 (3d Cir. Aug. 10, 2020) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 397(1997)).

[43] *Roman*, 914 F.3d at 798 (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).

[44] *Id.* (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).