**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH HEYWARD** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  20-530** |
| | : | |
| **CITY OF PHILADELPHIA,** *et al.* | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                            **December 23, 2020**

 Long-incarcerated citizen Joseph Heyward *pro se* sues the City of Philadelphia and two of its police officers claiming they lost a key piece of evidence at an unpleaded time depriving him of the ability to demonstrate his actual innocence of murder and arson convictions through DNA testing of a cigarette lighter used in a 2001 arson killing one person and injuring six others. He allegedly confessed. He pleaded guilty to murder and arson in 2003. He exhausted direct appeals of his guilty plea and lost two rounds of post-conviction relief act petitions in state court. Fifteen years later, he moved the state court to forensically test the DNA on a cigarette lighter used in the arson under an amended Pennsylvania statute. A year later, Philadelphia Police admitted it lost the lighter but do not tell us when. The Pennsylvania Post-Conviction Relief Act court then denied his third petition for post-conviction relief resting on his claim of the lost lighter. Mr. Heyward now sues the City and two of its investigating officers from 2001 arguing their loss of the cigarette lighter violated his procedural due process and equal protection rights to have this inculpatory evidence tested to show his DNA is not on the lighter and thus be able to show his actual innocence warranting his release. The City and its officers move to dismiss. We grant the motion to dismiss the City for supervisory liability and his equal protection claims as not pleaded. We will proceed into discovery on Mr. Heyward's procedural due process claim. The officers are incorrect as to the procedural due process right to DNA test evidence even years after a guilty plea. We are also

unable to find the officers are today entitled to qualified immunity since the Supreme Court set clearly established law mandating preservation of evidence, and Pennsylvania regulations and Police Department directives confirmed this preservation obligation during the time the officers may have lost the evidence.

## I.   Alleged *pro se* facts.[1]

A Philadelphia house fire in October 2001 killed one person and injured six others including a Philadelphia fireman.[2] The Philadelphia Fire Department determined arson as the cause of the fire after finding liquid accelerant and a cigarette lighter on the first floor of the house.[3] Philadelphia Police Detective John Harkins and Officer John Taggart investigated the fire. Detective Harkins interviewed witnesses who reported seeing Mr. Heyward flicking a lighted cigarette toward the house before leaving the area.[4] Mr. Heyward initially admitted "[f]loor debris, carpeting and a cigarette lighter were recovered and submitted for analysis that very same night."[5] He does not tell us what type of analysis the police conducted on these items.

Police obtained a warrant for Mr. Heyward's arrest and, while being questioned by police, Mr. Heyward confessed to Detective Harkins, including to using a cigarette lighter to start the fire.[6] On May 7, 2003, Mr. Heyward pleaded guilty in state court to murder, arson, risking a catastrophe, and aggravated assault.[7] Following his guilty plea, the Philadelphia County Court of Common Pleas convicted him of second degree murder, arson, and six counts of aggravated assault.[8] The state court sentenced Mr. Heyward to life imprisonment without parole.

### Pennsylvania's post-conviction DNA testing statute.

The Pennsylvania General Assembly made Pennsylvania's post-conviction DNA testing statute effective on September 9, 2002. The General Assembly provided, among other things, "[a]n individual convicted of a criminal offense in a court of this Commonwealth and serving a term of

imprisonment . . . may apply by making a written motion to the sentencing court for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction."[9]

The evidence to be DNA tested "may have been discovered either prior to or after the applicant's conviction" and the General Assembly provided "evidence shall be available for testing as of the date of the motion."[10] The General Assembly further provided: "If the evidence was discovered prior to the applicant's conviction, the evidence shall not have been subject to the DNA testing requested because the technology for testing was not in existence at the time of the trial *or* the applicant's counsel did not seek testing at the time of the trial in a case where a verdict was rendered on or before January 1, 1995, *or* the applicant's counsel sought funds from the court to pay for the testing because his client was indigent and the court refused the request despite the client's indigency."[11]

The General Assembly required an applicant "present a *prima facie* case demonstrating that the: (i) identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction and sentencing; and (ii) DNA testing of the specific evidence, assuming exculpatory results, would establish: (A) the applicant's actual innocence of the offense for which the applicant was convicted; . . .."[12]

Pennsylvania courts began to interpret this September 9, 2002 statute as precluding defendants who voluntarily confessed or pleaded guilty to the crime from eligibility for post-conviction DNA testing because the defendant could not show "actual innocence" as required by the statute.[13]

The Pennsylvania Supreme Court rejected the reasoning in this line of cases in its 2011 decision in *Commonwealth v. Wright*.[14]  In *Wright*,  the Pennsylvania Supreme Court addressed

whether a convicted person seeking DNA testing under Pennsylvania's statute "is precluded by his confession, which was ruled to be voluntary and admitted into evidence against him at trial, from establishing a *prima facie* case demonstrating that DNA testing would establish his actual innocence."[15] The Supreme Court held a confession, even if adjudicated voluntary, does not constitute a *per se* bar to establishing a *prima facie* case for DNA testing under section 9543.1 if he meets all the statute's requirements.[16]

Seven years later in 2018, Pennsylvania state Senator Stewart J. Greenleaf led the Pennsylvania General Assembly in amending section 9543.1 effective December 24, 2018, to include, among other things, a guilty plea to a crime of violence or confession "shall not prohibit the applicant from asserting actual innocence . . . or the court from making a determination and ordering DNA testing . . .."[17]

### *Mr. Heyward's post-conviction Motion for DNA testing in state court and, during the pendency of the motion, filed a section 1983 action here.*

In March 2018, over nine months before Pennsylvania amended its DNA testing statute, Mr. Heyward moved the state court for forensic DNA testing under the previous version of § 9543.l.[18] Mr. Heyward intended to demonstrate his actual innocence of the crimes to which he pleaded guilty through DNA testing of the lighter and other physical evidence. Mr. Heyward moved for DNA testing "of any evidence recovered from [his] criminal case, including the cigarette lighter . . .."[19]

On May 20, 2019, Lieutenant Thomas Macartney of the Philadelphia Police Department's Evidence Custodian Unit advised the Philadelphia District Attorney's Office the lighter could not be located: "I[n] reference to your request to locate the existence of a 'lighter' in the case of Joseph Heyward under DC# 01-12-082642. A check of police department records shows it was placed on property receipt 9001071 and in the custody of Police Officer John Taggart #1888 of the Crime

Scene Unit on 12-09-2002. There is no record of it being received at the Evidence Custodian Unit."[20]

On July 10, 2019, Mr. Heyward's court-appointed Post Conviction Relief Act ("PCRA")[21] attorney advised him the lighter sought to be DNA tested could not be located by the Philadelphia Police Department.[22] Mr. Heyward's counsel moved to withdraw, filing a *Finley* no-merit letter on November 20, 2019.[23]

In the meantime, Mr. Heywood filed a civil rights action here on October 7, 2019 – before the Philadelphia Court of Common Pleas disposed of his motion for DNA testing – alleging he has a "state created liberty interest that only requires him to demonstrate his actual innocence in the context of post-conviction proceedings with appropriate evidence" and the loss of the lighter and other evidence in his criminal case prejudiced his attempt to show his actual innocence.[24] He alleged a deprivation of "adequate access to courts" in violation of the Eighth Amendment, a violation of procedural due process, a *Brady*[25] violation, and "government interference and a blatant miscarriage of justice."[26]

We dismissed Mr. Heyward's *pro se* complaint on January 8, 2020 seeking to proceed *in forma pauperis* after screening it under 28 U.S.C. § 1915(e)(2)(B)(ii).[27] We did not permit Mr. Heyward to file an amended complaint but dismissed his claims without prejudice to him filing a new lawsuit in the event the state court vacated his conviction. We have no record a Pennsylvania state court vacated Mr. Heyward's conviction.

Mr. Heyward then filed this case on January 30, 2020 despite no change in the state court after our January 8, 2020 dismissal Order and the state court had yet to dismiss his PCRA action. Mr. Heyward *pro se* alleged the City, the Philadelphia Police Department, Detective Harkins, and

Officer Taggart deprived him of his due process rights under the Fifth and Fourteenth Amendments by losing the lighter used in the crimes preventing him from testing the DNA on the lighter.[28]

The state court dismissed his motion for post-conviction DNA testing on February 13, 2020 without hearing and without opinion.[29] The parties offer no reason for this dismissal and it appears there is no written opinion. There is no mention of Mr. Heyward appealing. The state court's denial of his third PCRA petition is a final judgment.

### We dismissed Mr. Heyward's original complaint with leave to file an amended complaint.

On September 15, 2020, we dismissed Mr. Heyward's complaint against Detective Harkins and Officer Taggart for violating his civil rights because he failed to allege their personal involvement in the alleged due process violation.[30] We dismissed municipal liability claims against the City for failing to identify a custom or policy depriving him of procedural due process.[31] We allowed Mr. Heyward leave to file an amended complaint if he could allege personal involvement by Detective Harkins and Officer Taggart and the City's custom or policy depriving him of procedural due process.

Mr. Heyward timely filed an amended complaint.[32] He now alleges an equal protection and procedural due process claim and seeks $5 million in compensatory damages and $2.5 million in punitive damages. He alleges Detective Harkins led the investigation into the arson responsible for "overseeing, procuring and preserving any/all physical evidence for possible DNA analysis."[33] He alleges Officer Taggart "was the last known individual to have possession of the remaining evidence from" the criminal action.[34]

Mr. Heyward alleges "Defendants engaged in illegal policies, orders, commands and procedures to 'make the evidence go away' by falsification of property receipts" used in criminal prosecutions to "identify evidence and chain of custody evidence."[35] He alleges through this

practice, Detective Harkins "expects and requires" officers, including Officer Taggart, "to obscure the source of recovered physical evidence by falsifying the property receipt required pursuant to any arrest."[36] Mr. Heyward alleges in conformity with this practice, Detective Harkins instructed Officer Taggart (a) "not to truthfully state the location of the recovered evidence from [Mr. Heyward's] criminal case, creating a due process violation"; and, (b) "to omit the recovered evidence from [Mr. Heyward's] criminal case absent the specific location of said evidence."[37]

Mr. Heyward alleges the "making the evidence to away" policy is achieved by "falsifying the Property Receipt that lists the recovered items."[38]  He alleges property receipts are "a primary item of evidence in any murder prosecution and/or post-conviction proceedings" and the City's practice of "falsification of property receipts brings into question the integrity of the evidence, validity of prosecution, and credibility of those officers who sign false receipts, and further puts individuals['] constitutional rights at serious risk."[39]

## II.  Analysis[40]

The City, Detective Harkins, and Officer Taggart move to dismiss Mr. Heyward's amended complaint arguing (1) he fails to state a claim for procedural due process; (2) Detective Harkins and Officer Taggart are entitled to qualified immunity; and (3) he fails to state a municipal liability claim against the City.[41] The incarcerated Mr. Heyward did not respond to the Motion to dismiss.

### A.  We dismiss the equal protection claim.

Mr. Heyward alleges the Defendants' loss of the cigarette lighter for DNA testing deprives him of equal protection under the law. To state an equal protection claim, Mr. Heyward must allege he is a member of a protected class and treated differently from persons who are similarly situated as a result of purposeful discrimination.[42]

Mr. Heyward alleges the City and its officers deprived him of "the opportunity for confrontation and cross-examination, as well as the protected right to the same terms, conditions, privileges and benefits that other prisoners seeking to use appropriate evidence in a post-conviction DNA proceeding would have available to them under any normal circumstance."[43] Mr. Heyward fails to allege he is a member of a protected class, similarly situated to members of an unprotected class, treated differently from members of the unprotected class, and purposeful discrimination. He fails to state an equal protection claim and we dismiss it without prejudice.

### B. Mr. Heyward states a procedural due process claim.

Mr. Heyward alleges the City's and its officers' loss of the cigarette lighter evidence deprived him of procedural due process. The City and its officers move to dismiss with prejudice Mr. Heyward's procedural due process claim arguing he does not have a due process right to access the lighter evidence seventeen years after he pleaded guilty.

To state a procedural due process claim, Mr. Heyward must allege: (1) deprivation of an individual interest encompassed within the Fourteenth Amendment's protection of "life, liberty, or property"; and, (2) "the procedures available . . . did not provide 'due process of law.'"[44] Thirteen  years before the police investigated this house fire, the Supreme Court in *Arizona v. Youngblood* clearly established the "failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant" may give rise to a due process violation if a criminal defendant can show bad faith on the part of the police.[45] The Supreme Court required the accused show bad faith: "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."[46]

Under *Youngblood*, Mr. Heyward alleges the City and its officers acted in bad faith by falsifying property receipts to cover up their loss of this evidence after his 2002 arrest, during his prosecution leading to his 2003 plea and conviction, and to date.  Mr. Heyward alleges Detective Harkins instructed Officer Taggart to falsify the property receipt for the lighter and "not to truthfully state the location of the recovered evidence" from Mr. Heyward's criminal case.[47]

The City and its officers recognize *Youngblood* creates a due process right but argue Mr. Heyward's situation is different. They argue Mr. Heyward does not challenge the loss of "potentially useful evidence," but instead simply asserts a *per se* violation of his due process rights because he cannot currently access a lighter previously available to him during his prosecution and could not overturn his guilty plea and conviction. They argue facts: even if the lighter is located, tested, and found to contain another individuals' DNA or fail to show Mr. Heyward's DNA, it "would not and could not exonerate [him] because he confessed and pleaded guilty to murder."

We disagree with Defendants' reasoning on both fronts. First, there is no allegation Mr. Heyward had access to the lighter during his prosecution. The City and its officers ask us to assume such access from an allegation in Mr. Heyward's original complaint: "[f]loor debris, carpeting and a cigarette lighter were recovered and submitted for analysis that very same night" of the October 19, 2001 fire.[48] While Mr. Heyward admitted in his initial complaint someone submitted the lighter for "analysis" the same night as the fire, he does not admit, and we have no allegation of, an analysis actually performed, the results of an analysis, who performed the analysis and when, and whether the City and its officers made the lighter available for testing after the fire. Under Mr. Heyward's facts, the City and its officers could have plausibly disposed of the lighter the day after the fire.

At the motion to dismiss stage, we cannot give weight to Defendants' factual assertion Mr. Heyward had available the lighter during his prosecution. To the contrary, we must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of Mr. Heyward. And Mr. Heyward alleges Detective Harkins instructed Officer Taggart "not to truthfully state the location of the recovered evidence from [Mr. Heyward's] criminal case . . ." and instructed Officer Taggart "to omit the recovered evidence from [Mr. Heyward's] criminal case absent the specific location of said evidence . . ." suggesting Mr. Heyward did not have access to the lighter before he pleaded guilty on May 7, 2013. Indeed, the letter from Lieutenant Macartney shows the lighter "was placed on a property receipt . . . and in the custody of [Officer Taggart] . . . on 12-09-2002" and "[t]here is no record of it being received at the Evidence Custodian Unit."[49]

We also disagree with the City's and its officers' second argument even if the lighter is not lost, could be tested, and found to contain another person's DNA and/or fail to show Mr. Heyward's DNA, "it would not and could not exonerate [him] because he confessed and pleaded guilty to murder." This unpleaded fact is not the law in Pennsylvania since 2011 when the Pennsylvania Supreme Court in *Wright* rejected such a reading of the post-conviction DNA testing statute. In 2018, the Pennsylvania General Assembly amended section 9543.1 to make clear a confession and guilty plea does not prohibit applicants like Mr. Heyward from asserting actual innocence under the post-conviction DNA statute.

Under the Supreme Court's 1988 holding in *Youngblood*, Mr. Heyward states a procedural due process claim to preserve the lighter which "could have been subjected to tests, the results of which might have exonerated" him if he can show bad faith on the part of police. We plausibly infer Defendants' efforts to "make evidence go away" and to do so "with deliberate indifference"

alleges bad faith on the part of police. Discovery may ultimately disprove Mr. Heyward's allegations, but we do not concern ourselves with proof at the motion to dismiss stage.[50]

### C.  We cannot grant qualified immunity to the officers on today's record.

Detective Harkins and Officer Taggart next argue they are entitled to qualified immunity from Mr. Heyward's claims.

"Under the now-familiar standard for the judge-created defense of qualified immunity, a state officer is shielded from a suit for monetary damages under § 1983 unless 'the official violated a . . . constitutional right,' and 'the right was clearly established at the time of the challenged conduct.'"[51] "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it."[52] "That is, the legal rule must have been 'dictated by controlling authority or a robust consensus of cases of persuasive authority'" and the Supreme Court "has repeatedly emphasized that 'clearly established law should not be defined at a high level of generality.'"[53] "'A rule is too general if the unlawfulness of the [official's] conduct does not follow immediately from the conclusion that the rule was firmly established.'"[54]

Detective Harkins and Officer Taggart argue "no reasonable detective or police officer could possibly have known that they could be sued for a procedural due process violation for failure to preserve evidence, which was not potentially useful, by a plaintiff who pleaded guilty seventeen years prior." They assert "the lack of case law on this specific issue indicates that such a Fourteenth Amendment right was not clearly established at either the time of [Mr. Heyward's] prosecution or in 2018 when he requested DNA testing. A reasonable officer would not have understood that losing the lighter seventeen years after the crime, in which the criminal defendant confessed and pled [sic] guilty, would violate that individual's procedural due process rights."

But we do not know when Officer Taggart lost the lighter. We reject the officers' theory a "reasonable officer would not have understood that losing the lighter *seventeen years after the crime*" would violate Mr. Heyward's due process. This is the officers' version of the facts and assumes Officer Taggart lost the lighter sometime in 2018. If so, losing the evidence may violate Pennsylvania law then-existing for several years and the officers' internal directives.

We know there is a clearly established due process violation where police, in bad faith, fail to preserve evidence since the Supreme Court's 1988 *Youngblood* decision. The Court explained the bad faith requirement as "stem[ming] from our unwillingness to read the 'fundamental fairness' requirement of the Due Process Clause . . . as imposing on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution. We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."[55]

In addition to *Youngblood*, Pennsylvania since 1994 requires "Police records *shall be* maintained as follows: . . . "(8) Criminal history/investigatory case files. These records include, but are not limited to, arrest and detention records, citations and complaints, crime analysis records, evidence records, field notes, hospital and medical records, lab reports, offense reports,

probation and parole records, press releases, search warrants, subpoenas and vehicular reports. (i) Homicides/suspicious deaths/missing persons. Retain these records 75 years. . . . (21) Property records; evidence/found/recovered. Retain these records 10 years after property is no longer in custody of the police department if the record is not part of the criminal history case file."[56]

The officers are also on notice from their internal police directives. Philadelphia Police Department Directive 12.15 – Property Taken Into Custody, at least as of 2015, had policies in place for: the processing of all property taken into custody and transferred to the proper storage facility; the transfer of evidence "to the storage agency by the officer who took the initial custody"; transportation of evidence by the Evidence Custodian Unit "from the Divisional/Unit Evidence Drop Boxes and Secure Evidence Holding Room . . ."; an evidence intake procedure including "[w]hen evidence is confiscated by Police District personnel, . . . the confiscating officer and their immediate supervisor will ensure that the evidence is inventoried, placed on a property receipt, and submitted to the police district ORS wherein the Divisional Headquarters are located no later than the end of the employee's tour of duty"; and the "securing of evidence" including recording "the property on the Evidence Receipt Log and place the item into the Evidence Drop Box or Evidence Room",  "associated property receipts will be held in a secure location at the ORS's desk until the Evidence Custodian Unit picks up the evidence," and obligations of Evidence Custodian Unit personnel.[57]

The Directive provides a procedure for obtaining evidence for court including "the police officer will report to the [Evidence Custodian Unit] exchange the 'arresting officer's' copy of the property receipt . . . for the evidence and the 'agency' copy [and] evidence "must be returned to the designated storage location every day after court by 6 PM unless the property is retained by

the courts. . . ."[58] The Directive provides a procedure for the Evidence Custodian Unit to dispose of property.[59]

Given the case law since 1988, Pennsylvania law, and the Police Department's Directive 12.15 regarding the disposition and retention of evidence, we disagree with the officers' argument "no reasonable detective or police officer could possibly have known that they could be sued for a procedural due process violation for failure to preserve evidence, which was not potentially useful, by a plaintiff who pleaded guilty seventeen years prior."[60]  Lieutenant Macartney's May 2019 letter to the District Attorney's office suggests Officer Taggart had the lighter as of December 9, 2002 and there is no record of the lighter being returned to the Evidence Custodian Unit. This "no record" appears to be inconsistent with Police Department Directive. But Mr. Heyward also is challenging the accuracy of this December 9, 2002 report. He may be able to show the officers lost the lighter either during his prosecution (when the law may not have been as clear) or later when Pennsylvania law clearly established their obligation to preserve the evidence. Discovery may give rise to facts which could lead a jury to find the officers deprived Mr. Heyward of procedural due process under *Youngblood*.

We cannot today hold the "a Fourteenth Amendment right was not clearly established at either the time of [Mr. Heyward's] prosecution or in 2018 when he requested DNA testing." At this juncture, we will not apply the defense of qualified immunity.

### D.  We dismiss the *Monell* supervisory claim against the City without prejudice.

We explained the requirements to sufficiently plead a section 1983 municipal liability claim against the City in our September 15, 2020 memorandum dismissing Mr. Heyward's claim.[61] Under the Supreme Court's decision in *Monell v. New York City Department of Social Services*, a

municipality, like the City, is not liable for the unconstitutional acts of its employees under a *respondeat superior* theory.[62]

In *Monell*, the Supreme Court held only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."[63] "A government policy or custom can be established in two ways. Policy is made when a 'decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action' issues an official proclamation, policy, or edict. A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanently and well-settled' as to virtually constitute law."[64]

To satisfy the pleading standard, Mr. Heyward "must identify a custom or policy, and specify what exactly that custom or policy was."[65] The established custom or policy . . . "must be the 'moving force' behind the injury alleged."[66] Mr. Heyward must "also allege that the policy or custom was the 'proximate cause' of his injuries."[67] Mr. Heyward "may do so by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation he alleges."[68]

Mr. Heyward alleges "Defendants engaged in illegal policies, orders, commands and procedures to 'make the evidence go away' by falsification of property receipts that are used in court prosecutions to identify evidence and chain of custody of evidence."[69] He pleads no facts of a municipal custom or policy or a decisionmaker with "final authority to establish a municipal policy" or a "course of conduct … so permanently and well-settled as to virtually constitute law," or the official custom or policy caused this alleged deprivation of due process.

We dismiss his *Monell* claim against the City.

III.    **Conclusion**

The City and its officers move to dismiss arguing Mr. Heyward fails to state a cognizable procedural due process claim, the individual officers are entitled to qualified immunity, and he fails to state a claim for municipal liability against the City. We agree in part with the City and dismiss the equal protection and municipal liability claim. We disagree as to the due process claim against the two officers and cannot today find they did not violate clearly established law in losing the cigarette lighter and allegedly falsifying property receipt records to conceal the lost lighter.

---

[1] The amended complaint does not provide the underlying factual background. We repeat the facts from our September 15, 2020 memorandum (ECF Doc. No. 14).

[2] ECF Doc. No. 2 at 12, ¶¶ 1-6.

[3] *Id.* at 12, ¶¶ 5-6.

[4] *Id.* at 12,  ¶¶ 7-8.

[5] *Id.* at 12, ¶ 6.

[6] *Id.* at 12, ¶¶ 13-14.

[7] *Commonwealth v. Heyward*, No. CP-51-CR-1001841-2002 (Phila. Ct. of Common Pleas) ("docket entries"). The docket entries show Mr. Heyward pleaded guilty to these crimes.

[8] ECF Doc. No. 2 at 13, ¶ 18.

[9] 42 Pa. Cons. Stat. Ann. § 9543.1(a)(1).

[10] *Id.* at § 9543.1(a)(2).

[11] *Id.* (emphasis added).

[12] *Id.* at § 9543.1(c)(3).

---

[13] *See Commonwealth v. Young*, 873 A.2d 720 (Pa. Super. Ct. 2005) (confession to murder bars claim of actual innocence of the offense for which the applicant was convicted to satisfy a *prima facie* case for DNA testing); *Williams v. Erie Cnty. Dist. Attorney's Office*, 848 A.2d 967 (Pa. Super. Ct. 2004) (language of section 9543.1 precludes application to petitioners seeking to challenge convictions resulting in guilty pleas by reference to DNA evidence).

[14] 14 A.3d 798 (Pa. 2011).

[15] *Wright*, 14 A.3d at 800.

[16] *Id.* at 806.

[17] 42 Pa. Cons. Stat. Ann. § 9543.1(a)(5) (effective December 24, 2018).

[18] ECF Doc. No. 2 at 13, ¶ 20.

[19] ECF Doc. No. 2 at 13, ¶ 21.

[20] ECF Doc. No. 13 at 6 (using the pagination assigned by the CM/ECF docketing system).

[21] Pennsylvania's Post Conviction Relief Act, ("PCRA"), 42 Pa. Cons. Stat. Ann. § 9541, *et seq.* "provides for an action by which persons convicted of crimes they did not commit and persons serving illegal sentences may obtain collateral relief." 42 Pa. Cons. Stat. Ann. § 9542. Under Pennsylvania law, "a criminal defendant has a right to representation of counsel for purposes of litigating a first PCRA petition through the entire appellate process." *Commonwealth v. Robinson*, 970 A.2d 455, 457 (Pa. Super. Ct. 2009) (citing Pa.R.Crim.P. 904(c); *Commonwealth v. White*, 871 A.2d 1291, 1294–95 (Pa. Super. Ct. 2005); *Commonwealth v. Quail*, 729 A.2d 571, 573 (Pa. Super. Ct. 1999)).

[22] ECF Doc. No. 2 at 13, ¶ 22; ECF Doc. No. 13 at 5-6.

[23] ECF Doc. No. 2 at 13, ¶¶ 23-26. A "*Finley*" letter, so named after a 1988 Pennsylvania Superior Court case *Commonwealth v. Finley*, requires an attorney seeking to withdraw from PCRA representation to explain why issues in a case lack merit and request permission from the court to withdraw. An attorney must "proceed . . . under *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988) and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. Ct. 1988) [and] . . . must review the case zealously. *Turner/Finley* counsel must then submit a 'no-merit' letter to the trial court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw. Counsel must also send to the petitioner: (1) a copy of the 'no merit' letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel." *Commonwealth v. Doty*, 48 A.3d 451, 454 (Pa. Super. Ct. 2012).

---

[24] *Heyward v. City of Phila..*, No. 19-5469 ("*Heyward I*"). Mr. Heyward initially filed his complaint in the United States District Court for the Western District of Pennsylvania which transferred the case to this District.

[25] Under *Brady v. Maryland*, 373 U.S. 83 (1963), the United States in a criminal prosecution "must disclose evidence that is (1) material to either guilt or punishment and (2) favorable to the accused." *United States v. Bansal*, 663 F.3d 634, 670 (3d Cir. 2011) (citing *United States v. Bagley*, 473 U.S. 667, 674 (1985)). "A *Brady* violation occurs if the government does not turn over such evidence and its failure to do so causes prejudice to the defendant." *Id.* (quoting *Strickler v. Greene*, 527 U.S. 263, 281–282 (1999)).

[26] *Heyward I*, ECF Doc. No. 4.

[27] *Id.*, ECF Doc. No. 13.

[28] On March 4, 2020, we dismissed the Philadelphia Police Department with prejudice because it is not a proper defendant under 42 U.S.C. § 1983.  ECF Doc. No. 9 at ¶ 6, n.2.

[29] *See* Docket entries, *Commonwealth v. Heyward*, No. CP-51-CR-1001841-2002.

[30] ECF Doc. Nos. 14, 15.

[31] *Id.*

[32] ECF Doc. No. 20.

[33] *Id.* ¶ 4.

[34] *Id.* ¶ 5.

[35] *Id.* ¶ 14.

[36] *Id.* ¶15.

[37] *Id.* ¶¶ 18, 20.

[38] *Id.* ¶ 19.

[39] *Id.* ¶¶ 20, 21.

[40] Federal Rule of Civil Procedure 12(b)(6) requires a complaint to state a claim upon which relief can be granted. Fed. R. Civ. P. (12)(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Bos.*

*MBS ARMT 2005-8*, 806 F. App'x 101, 104,  n. 5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim has facial plausibility when the plaintiff pleads factual content . . . allow[ing] the court to draw the reasonable inference . . . the defendant is liable for the misconduct alleged." *Robert W. Mauthe M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility . . . a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668). "Despite *Iqbal*'s heightened pleading requirements, the district court must be more flexible in its interpretation of *pro se* pleadings." *Boyer v. Mohring*, 994 F. Supp. 2d 649, 654 (E.D. Pa. 2014); *see Higgs v. Attorney Gen. of the United States*, 655 F.3d 333, 339 (3d Cir. 2011), as amended (September 19, 2011) ("[W]hen presented with a pro se litigant, we 'have a special obligation to construe his complaint liberally.'"(quoting *United States v. Miller*, 197 F.3d 644, 648 (3d Cir. 1999)).

In determining whether to grant a 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C.,* 806 F. App'x at 152 (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878-79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[41] ECF Doc. No. 21.

[42] *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439–42 (1985); *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 273 (3d Cir. 2014).

[43] ECF Doc. No. 20 ¶ 26.

[44] *Ferris v. Milton S. Hershey Med. Ctr.*, 701 F. App'x 91, 96 (3d Cir. 2017) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006)).

[45] 488 U.S. 51, 57–58 (1988).

[46] *Id.* at 58.

[47] ECF Doc. No. 20 ¶¶ 14–22.

[48] ECF Doc. No. 2 ¶ 6.

---

[49] ECF Doc. No. 13 at 6.

[50] We are aware of a recent decision from our Court of Appeals, *Wade v. Monroe Cnty. Dist. Attorney*, 800 F. App'x 114 (2020) dismissing the due process claim of state court convicted felon Robert Muir Wade who sued the Monroe County District Attorney under section 1983 for the denial of access to post-conviction DNA testing. The district court found the state court's application of the post-conviction DNA testing statute, 42 Pa. Cons. Stat. Ann. § 9543.1, as applied to Mr. Wade violated due process. *Wade*, 800 F. App'x at 117.  Our Court of Appeals vacated the district court's decision, finding the federal court lacked subject-matter jurisdiction under the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine "bars federal district courts from exercising jurisdiction 'over suits that are essentially appeals from state-court judgments' [and] prohibits 'state-court losers' from complaining about 'injuries caused by state court judgments' and from 'inviting district court review and rejection of those judgments." *Id.* at 117–18 (quoting *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 165 (3d Cir. 2010) and *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 284 (2005)). Our Court of Appeals found Mr. Wade challenged "the PCRA court's particular interpretation of the DNA statute and application of the statute to him, not to the statute as 'authoritatively construed' by Pennsylvania courts or as it applies to prisoners generally" and based his due process claim on "the injury caused by [the] adverse state-court ruling, and it is exactly the type of claim a federal court cannot review." *Id.* at 119. *Wade* is distinguishable from Mr. Heyward's case. Mr. Heyward makes a due process challenge to the City's and officers' failure to preserve evidence, not a challenge to a state court ruling, making the *Rooker-Feldman* doctrine inapplicable. We addressed, and rejected, the City's *Rooker-Feldman* argument in our memorandum to the City's and officers' motion to dismiss the original complaint. *See* ECF Doc. No. 14.

[51] *Weimer v. Cnty. of Fayette, Pa*., 972 F.3d 177, 190 (3d Cir.  2020) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

[52] *Id.* (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014)).

[53] *Id.* (quoting *District of Columbia v. Wesby*, — U.S. —, 138 S. Ct. 577, 589–90, 199 L.Ed.2d 453 (2018); *White v. Pauly*, — U.S. —, 137 S. Ct. 548, 552, 196 L.Ed.2d 463 (2017) (per curiam) (internal quotation marks omitted)).

[54] *Id.* (quoting *Wesby*, 138 S. Ct. at 590 (alteration, internal quotation marks, and citation omitted)).

[55] *Youngblood*, 411 U.S. at 58 (internal citation omitted).

[56] 46 Pa. Code § 15.59.

[57] Philadelphia Police Directive 12.15 at §§ 7, 8.

[58] *Id.* at § 11.

[59] *Id.* at § 13.

[60] The City and officers put the rabbit in the hat by arguing "no reasonable detective or police officer could possibly have known that they could be sued for a procedural due process violation for failure to preserve evidence, ***which was not potentially useful***, by a plaintiff who pleaded guilty seventeen years prior." ECF Doc. No. 21 at 12(emphasis added). As already explained, we reject the argument post-conviction DNA testing of the lighter is "not potentially useful" because Mr. Heyward confessed to the crime and pleaded guilty. Under the *Wright* case and the 2018 amendment to section 9543.1 post-conviction DNA testing, Mr. Heyward could avail himself of post-conviction DNA testing under section 9543.1 and we cannot perceive a cigarette lighter allegedly used in an arson is "not potentially useful" evidence.

[61] ECF Doc. No. 14.

[62] *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

[63] *Id.* at 694.

[64] *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009) (citation omitted); *see also Roman v. City of Newark,* 914 F.3d 789, 798 (3d Cir. 2019) (defining "policy" and "custom").

[65] *McTernan*, 564 F.3d at 658 (citation omitted).

[66] *Lesher v. Zimmerman*, 822 F. App'x 116, 121 (3d Cir. 2020) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 397(1997)).

[67] *Roman*, 914 F.3d at 798 (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).

[68] *Id.* (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

[69] ECF Doc. No. 20 ¶ 14.