**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH HEYWARD** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 20-530 |
| | : | |
| **HOMICIDE DET. JOHN HARKINS AND OFFICER JOHN TAGGART,** *et al.* | : | |
| | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                    **February 23, 2022**

The Philadelphia Police Department cannot find a cigarette lighter first secured as evidence in an 2003 arson murder conviction and now sought by the man who confessed to using the lighter to start the fire murdering a man. The man pleaded guilty to arson and murder; he then unsuccessfully appealed and twice unsuccessfully moved for post-conviction relief. He then moved again for post-conviction relief in 2019 arguing he would like to review the DNA on the lighter to support his third post-conviction relief act petition. The convicted man proceeding pro se now broadly concludes officers lost this lighter in bad faith sometime between his 2003 conviction and his 2019 request for the lighter.

The convicted man pro se sued several police officers arguing they deprived him of procedural due process. We partially denied motions to dismiss and allowed discovery on procedural due process claims. The man does not adduce evidence of several of the officers' personal involvement in losing the lighter. The man also does not adduce evidence of bad faith in destroying or losing the lighter by the officer who admittedly last possessed the lighter in December 2002. We today grant summary judgment on the convicted man's civil rights claim.

I. **Undisputed material facts.**[1]

An October 19, 2001 fire in a Philadelphia rooming house killed Michael Lee Emanuel and injured six others.[2] The Philadelphia Fire Marshal found arson.[3] The Marshal found the fire incendiary in nature resulting from gasoline poured in the living room and porch area of the rooming house and then ignited with an open flame.[4] Philadelphia Police ruled Mr. Emanuel's death a homicide.[5]

Philadelphia Police officers Detective Harkins, Detective Lynch, Sergeant Crosby, Officer Stark, and Officer Taggart investigated the arson and homicide.[6] The Officers executed a search warrant to process the scene, collect evidence, and interview eyewitnesses.[7] Eyewitnesses described the man who started the fire consistent with Mr. Heyward's description, including a witness who told police the description matched the description of her boyfriend, Mr. Heyward.[8] Philadelphia Police recovered a cigarette lighter outside the rooming house near the porch during their search on the evening of October 19, 2001.[9]

Philadelphia Police obtained a warrant for Mr. Heyward's arrest in July 2002.[10] Mr. Heyward confessed to using a lighter to start the fire at the rooming house while being questioned by Detective Harkins on August 12, 2002.[11] Officer Taggart placed the cigarette lighter on a property receipt almost four months later on December 9, 2002.[12]

*Mr. Heyward pleads guilty but seeks post-conviction relief for DNA testing of the cigarette lighter now lost.*

Mr. Heyward pleaded guilty on May 9, 2003 to murder, arson, risking a catastrophe, and aggravated assault.[13] The Court of Common Pleas sentenced Mr. Heyward to life imprisonment after convicting him of second-degree murder, arson, and six counts of aggravated assault.[14]

Mr. Heyward appealed from the judgment of sentence affirmed by the Pennsylvania Superior Court. He then moved under the Pennsylvania's Post Conviction Relief Act[15] but the

PCRA court dismissed his petition after appointed counsel moved to withdraw and filed a no-merit letter under *Commonwealth v. Finley*.[16] He moved again for post-conviction relief denied by the state court as untimely. The appellate court affirmed the denial when he failed to file briefs. He moved for post-conviction relief a third time in March 2018 seeking DNA testing.[17] He sought forensic DNA testing of the cigarette lighter under a Pennsylvania statute.[18] Mr. Heyward intended to demonstrate his actual innocence of the crimes to which he pleaded guilty through DNA testing of the lighter.

On May 20, 2019, over a year after Mr. Heyward's third post-conviction motion, Lieutenant Thomas Macartney of the Philadelphia Police Department's Evidence Custodian Unit reported he could not locate the lighter.[19] The Police Department records confirmed Officer John Taggert once had custody of the lighter but the Evidence Custodian Unit never did.[20] The Philadelphia Court of Common Pleas ultimately dismissed Mr. Heywood's post-conviction motion for DNA testing on February 23, 2020.[21]

### *Mr. Heyward claims a violation of due process for losing the cigarette lighter.*

Mr. Heyward then brought this civil rights case alleging the City of Philadelphia, the Philadelphia Police Department,[22] Detective Harkins, and Officer Taggart deprived him of his due process rights under the Fifth and Fourteenth Amendments by losing the cigarette lighter preventing him from DNA testing.[23] We dismissed Mr. Heyward's complaint against Detective Harkins and Officer Taggart for failure to allege their personal involvement in the alleged due process violation.[24] We dismissed municipal liability claims against the City for failing to identify a custom or policy depriving him of procedural due process.[25] We allowed Mr. Heyward leave to file an amended complaint if he could allege personal involvement by Detective Harkins and Officer Taggart and the City's custom or policy depriving him of procedural due process.

Mr. Heyward filed an amended complaint.[26] He again sued the City, Detective Harkins, and Officer Taggart alleging equal protection and procedural due process claims. We dismissed without prejudice the equal protection claim and municipal liability claim against the City, but allowed him to proceed on the procedural due process claims against Detective Harkins and Officer Taggart.[27]

Mr. Heyward filed a second amended Complaint alleging several state actors have policies and procedures to "make evidence go away" by falsifying property receipts used in criminal prosecutions and post-conviction DNA testing in violation of his procedural due process rights under the Fourteenth Amendment.[28] He added the City, former District Attorney Seth Williams, former Assistant District Attorney Carlos Vega, Assistant District Attorney Barbara Paul, his PCRA counsel Attorney James Berardinelli, The Honorable Benjamin Lerner, and Philadelphia Police officers Lieutenant Macartney, Detective Lynch, Sergeant Crosby, and Officer Stark.[29] He again named Detective Harkins and Officer Taggart as defendants.[30] He asked we declare the complained-of "acts and practices" violate his civil rights entitling him to $5 million in compensatory damages and $2.5 million in punitive damages.

After screening Mr. Heyward's second amended Complaint under section 1915(e), we dismissed his claims against the City, Judge Lerner, former District Attorney Williams, former Assistant District Attorney Vega, Assistant District Attorney Paul, and his PCRA counsel Attorney Berardinelli.[31] We allowed Mr. Heyward's amended claims against Lieutenant Macartney, Detective Lynch, Sergeant Crosby, Officer Stark, Detective Harkins, and Officer Taggart to proceed.[32]

The parties proceeded to discovery. Mr. Heyward pro se moved to compel Defendants to respond to written discovery and produce documents.[33] We granted Mr. Heyward's motion in part

requiring the state actors produce all responsive documents not previously produced and file a certification of trial counsel confirming production of all responsive discovery and a fulsome log of all withheld documents from the District Attorney's files.[34] The Assistant City Solicitor submitted a certification regarding the state actors' discovery responses, including certifying they produced "all documents referencing the lighter and scene or evidence control (including a record of all police personnel present), as well as all Crime Scene Unit records."[35] Mr. Heyward did not later move to compel discovery.

## II. Analysis

The Officers now move for summary judgment.[36] Mr. Heyward pro se opposes summary judgment.

Our Court of Appeals directs the steps in our analysis of Mr. Heyward's civil rights claim. Our first step is to "'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'"[37] To prevail on his civil rights claim, Mr. Heyward must show that a person acting under color of law deprived him of a constitutional right.[38] Mr. Heyward claims the Officers violated his procedural due process rights by losing the cigarette lighter recovered in the fire investigation preventing him from having the lighter DNA tested fifteen years after he pleaded guilty.

In *Arizona v. Youngblood*, the Supreme Court held "failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant" may give rise to a due process violation if a criminal defendant can show bad faith on the part of the police.[39] The Supreme Court required the accused show bad faith: "unless a criminal defendant can show bad faith on the part of the

police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."[40]

Once we define the constitutional right, we then consider whether the plaintiff demonstrates a defendant's "personal involvement in the alleged wrongs."[41] Because Mr. Heyward sues the Officers in their individual capacities,[42] he must show their personal involvement in the alleged constitutional violation; their liability cannot be based only on respondeat superior.[43] Mr. Heyward can show personal involvement by adducing evidence of "the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct."[44]

The Officers do not contest a deprivation of a constitutional right; they argue they cannot be held personally liable because: (1) there is no evidence to establish the personal involvement of Detective Harkins, Detective Lynch, Sergeant Crosby, Officer Stark, and Lieutenant Macartney; and (2) there is no evidence Officer Taggart acted in bad faith required to prevail on a procedural due process claim for failing to preserve evidence under *Youngblood*. Absent record evidence, the Officers seek the entry of judgment in their favor. We agree. There is no evidence of Detective Lynch, Sergeant Crosby, Officer Stark, Detective Harkins, or Lieutenant Macartney personal involvement in losing or destroying this evidence. There is no evidence of Officer Taggert's bad faith conduct. We grant summary judgment in the Officers' favor.

> **A. There is no evidence of personal involvement by Detective Lynch, Sergeant Crosby, Officer Stark, Detective Harkins, or Lieutenant Macartney in losing or destroying the lighter.**

To establish a civil rights claim against the Officers in their individual capacities, Mr. Heyward must show their personal involvement in the alleged wrongs. Mr. Heyward alleges:

- Detective Lynch, crime scene investigator, recovered the lighter from the scene for testing and "has actual knowledge of the lighter and its location before it became [lost]";[45]

- Sergeant Crosby and Officer Stark, crime scene investigators, "ha[d] actual knowledge of the lighter and its location before it became [lost]";[46]

- Detective Harkins, lead detective in the case, is responsible for overseeing, procuring and preserving all physical evidence for possible DNA analysis;[47]

- Detective Lynch and Detective Harkins directed officers to "obscure the source of recovered physical evidence" by falsifying property receipts, instructed officers at the crime scene to lie about the location of evidence, and then conspired with the District Attorney's Office to further the "making the evidence go away" scheme;[48] and,

- Lieutenant Macartney falsified property receipts and chose not to disclose key information about the location of the lighter in correspondence to City's Assistant District Attorney.[49]

But this is all we have; allegations only. There is no evidence Detective Lynch, Sergeant Crosby, and Officer Stark had actual knowledge of the lighter and its location before it became lost. There is no evidence Detective Lynch or Detective Harkins "required officers" such as Sergeant Crosby, Officer Stark, and Officer Taggart to "obscure the source of recovered physical evidence by falsifying the property receipt"; notified or conspired with the Philadelphia District Attorney to the "falsification of property receipts so both parties are aware of this wide-spread custom and/or unofficial policy"; instructed Sergeant Crosby, Officer Stark, and Officer Taggart "not to truthfully state the location of the recovered evidence from the crime scene"; or instruct Sergeant Crosby, Officer Stark, and Officer Taggart to "omit the recovered evidence from [Mr. Heyward's] criminal case absent the specific location" of the cigarette lighter. There is no evidence Lieutenant Macartney falsified property receipts and concealed information about the location of the cigarette lighter in his May 20, 2019 letter to the City's Assistant District Attorney.

When asked about evidence regarding allegations against Detective Harkins, Mr. Heyward swore: Detective Harkins is a senior officer and in that capacity he gives instructions to the Crime Scene Unit purportedly to obscure the source of recovered physical evidence by falsifying property

receipts; he "knows" Detective Harkins "is not an honorable officer" – based on the alleged coercion by Detective Harkins of Mr. Heyward's confession – and it is "not farfetched for [Mr. Heyward] to assume what [Detective Harkins] tells his colleagues."[50] Mr. Heyward also swore he does not "have an actual fact on how he [knows]" Detective Harkins specifically instructed Officer Taggart to lie about the location of the cigarette lighter.[51] Mr. Heyward did not provide us with the deposition testimony of any Officers.

The record shows Detective Harkins, Detective Lynch, Sergeant Crosby, Officer Stark, and Officer Taggart participated in the October 19, 2001 fire scene investigation.[52] Nothing else. There is no evidence to support Mr. Heyward's allegation Detective Lynch, Sergeant Crosby and Officer Stark had "actual knowledge of the lighter and its location" before it became lost. There is no evidence Detective Lynch or Detective Harkins instructed the other investigating Officers to lie about the location of the lighter. There is no evidence Lieutenant Macartney had "actual knowledge of the lighter and its location" before it became lost or had personal involvement in the alleged constitutional violation. The only evidence of Lieutenant Macartney's involvement is his May 20, 2019 letter responding to the City's Assistant District Attorney's inquiry as to the location of the cigarette lighter and reporting there is no record of the lighter being received at the Police Department's Evidence Custodian Unit.[53] There is no evidence of Lieutenant Macartney's personal involvement in the alleged falsification of property receipts and misrepresentation to the Assistant District Attorney.

Mr. Heyward asserts as fact "Defendants falsified documents to conceal the lost lighter", citing our December 23, 2020 memorandum granting in part and denying in part the motion to dismiss Mr. Heyward's amended complaint.[54] The portion of our memorandum Mr. Heyward cites analyzed Detective Harkins and Officer Taggart's argument they are entitled to qualified

8

immunity. We did *not* find Detective Harkins and Officer Taggart falsified documents to conceal the lost cigarette lighter. We explained we could not find a Fourteenth Amendment right was not clearly established at the time of Mr. Heyward's prosecution or in 2018 when he requested DNA testing given the law and Philadelphia Police Department Directive regarding the disposition and retention of evidence.[55] We appreciate Mr. Heyward's pro se status, but we did not make a fact finding as to Mr. Heyward's allegation Detective Harkins and Officer Taggart "falsified documents to conceal the lost lighter."

Mr. Heyward adduced no evidence showing the Officers' personal involvement in the lost cigarette lighter; there is no evidence of the Officers' "participation in or actual knowledge of and acquiescence in the wrongful conduct." We grant judgment in favor of Detective Lynch, Detective Harkins, Sergeant Crosby, Officer Stark, and Lieutenant Macartney.

### B. There is no evidence of Officer Taggart's bad faith necessary to sustain a procedural due process claim under *Youngblood*.

The record confirms Officer Taggart's personal involvement with the missing lighter as of late 2002. Officer Taggart argues we must enter judgment in his favor because there is no evidence he acted in bad faith in allegedly losing the cigarette lighter. Without a showing of bad faith, failure to preserve the cigarette lighter which might have been DNA tested, and possibly helpful, to Mr. Heyward is not a denial of due process.[56]

There is no dispute Officer Taggart prepared a property receipt for evidence on December 9, 2002.[57] A close inspection of the property receipt shows no reference to the lighter; the "Property Code" on the record indicates "9 = MISC."[58] The parties assume the property receipt references the cigarette lighter because Lieutenant Macartney's May 20, 2019 letter to Assistant District Attorney Paul states the object put on the property receipt by Officer Taggart on December 9, 2002 is the "lighter." The parties agree the evidence put on the December 9, 2002 property receipt is the

9

lighter. Nevertheless, there is no dispute Lieutenant Macartney advised Assistant District Attorney Paul on May 20, 2019 there is no record of the lighter being received at the Evidence Custodian Unit.[59] But we cannot conclude *ipso facto* Officer Taggart acted in bad faith. Mr. Heyward must show Officer Taggart's animus or a conscious effort to suppress exculpatory evidence.[60]

Mr. Heyward does not adduce evidence to support bad faith by Officer Taggart. In fact, he argues "[b]ut for" Defendants' "***incompetence*** … to reasonably secure and/or preserve the lighter," he would have had the opportunity to DNA test the lighter.[61] Failure to preserve potentially useful evidence, even a negligent failure to preserve evidence, does not constitute a denial of due process unless Mr. Heyward can show bad faith.[62]

Mr. Heyward points to Officer Taggart's response to a Request for Admission: "Officer Taggart told Plaintiff's [post-conviction] counsel, James Berardinelli, while conducting an investigation that he (Officer Taggart) had no idea what he did with [the cigarette lighter] on December 9, 2002."[63] Officer Taggart responded: "After reasonable inquiry, Defendants lack knowledge or information to admit or deny this request, and cannot readily obtain information sufficient to do so. To the extent a response is required, denied."[64] Mr. Heyward argues Officer Taggart "not having any recollection as to what became of the lighter constitutes itself as bad faith since no record indicates that the lighter *is* lost."[65] We disagree. First, Mr. Heyward would have us conclude the lighter is ***not*** lost because "no record indicates that the lighter *is* lost" which must mean Officer Taggart acted in bad faith. This is a leap we will not take with Mr. Heyward. There are two key documents here: (1) the record of Officer Taggart putting the lighter on property receipt on December 9, 2002; and (2) Lieutenant Macartney's May 20, 2019 letter to Assistance District Attorney Paul stating there is no record of the lighter being received at the Evidence Custodian Unit. While we may have two points on a sixteen-year timeline, we cannot assume

10

Officer Taggart acted in bad faith by purposefully destroying or "making the evidence go away" on or after December 9, 2002. We do not find this speculation creates a fact issue as to bad faith.

We also do not find Mr. Heyward's assertions he is a victim of "fraud upon the court" regarding an alleged intentional misrepresentation of fact made during Mr. Heyward's October 18, 2019 post-conviction proceeding creates a fact issue on Officer Taggart's bad faith.[66] Mr. Heyward attaches portions of the hearing transcript where his post-conviction counsel Attorney Berardinelli told the court the cigarette lighter is lost, he investigated and did not find "any sort of the malice or bad faith that would be needed to make out due process violation or anything like that", and he believed such a claim would be meritless under *Finley*.[67] Attorney Berardinelli told the state court he and the Assistant District Attorney together spoke with Officer Taggart who "has no idea what became of the lighter."[68] But this does not create a genuine issue of material fact regarding Officer Taggart's alleged bad faith in purposely destroying or losing the lighter.

We grant judgment in favor of Officer Taggart.

**III. Conclusion**

Mr. Heyward fails to adduce facts enabling him to show the essential elements of his due process violation. There is no evidence of the Officers' personal involvement and, for Officer Taggart, no evidence of bad faith in purposefully destroying or losing the cigarette lighter. We understand Mr. Heyward is proceeding pro se, but he must meet his burden under Federal Rule of Civil Procedure 56. We grant the Officers' motion for summary judgment.

---

[1] Our Policies require a Statement of Undisputed Material Facts ("SUMF") and an appendix in support of summary judgment. Defendants filed their motion and brief in support of summary judgment, SUMF, and Appendix at ECF Doc. Nos. 81, 81-1, and 81-2, respectively. Mr. Heyward responded to the Motion, SUMF and added his own additional facts, and submitted an appendix of additional documents at ECF Doc. No. 83.

---

[2] ECF Doc. No. 52, Second Amended Complaint ¶¶ 15–17; ECF Doc. No. 81-1, SUMF ¶ 2; ECF Doc. No. 83, Response to SUMF ¶ 2.

[3] ECF Doc. No. 81-3 at Appendix 11–24.

[4] ECF Doc. No. 81-1, SUMF ¶ 4; ECF Doc. No. 83, Response to SUMF ¶ 4; ECF Doc. No. 81-3 at Appendix 18.

[5] ECF Doc. No. 81-3 at Appendix 25.

[6] SUMF ¶ 5; Response to SUMF ¶ 5.

[7] SUMF ¶ 6; Response to SUMF ¶ 6.

[8] SUMF ¶ 7. In response, Mr. Heyward asserts he "can neither confirm nor deny" descriptions by witnesses of his weight, height, complexion, and style of dress. Response to SUMF ¶ 7. Nevertheless, Mr. Heyward's second amended Complaint pleads "[s]everal of the witnesses stated that [he] was seen flicking a lit cigarette towards [the rooming house] before leaving the area." ECF Doc. No. 52 ¶ 21.

[9] SUMF ¶ 8; Response to SUMF ¶ 8; ECF Doc. No. 81-3 at Appendix 25–26.

[10] ECF Doc. No. 52 ¶ 22.

[11] ECF Doc. No. 81-3 at Appendix 1–10.

[12] ECF Doc. No. 81-3 at Appendix 27; SUMF ¶¶ 10–11; Response to SUMF ¶¶ 10–11.

[13] *Commonwealth v. Heyward*, No. CP-51-CR-1001841-2002 (Phila. Ct. of Common Pleas) ("docket entries").

[14] *Id.* The docket entries show Mr. Heyward pleaded guilty to these crimes. The trial court sentenced Mr. Heyward to a concurrent term of ten to twenty years on the arson conviction, a concurrent term of five to ten years for each count of aggravated assault, and imposed no penalty for the risking catastrophe conviction. *Id.*

[15] 42 Pa. Cons. Stat. Ann. § 9541, *et seq.*

[16] 550 A.2d 213 (Pa. Super. Ct. 1988). *Finley* and *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988) "establish the procedure for withdrawal of court-appointed counsel in collateral attacks on criminal convictions. Prior to withdrawal, counsel must conduct an independent review of the record and prepare a 'no-merit' letter detailing the nature of the review that counsel conducted, listing the issues the petitioner wants to raise, and explaining why such issues lack merit." *Commonwealth v. Staton*, 120 A.3d 277, 294 (Pa. 2015).

[17] *See* Docket entries at 9. Under Pennsylvania law, any post-conviction petition, regardless of the title of the document filed, is evaluated under the PCRA. *Williams v. Erie Cnty. Dist. Attorney's Office*, 848 A.2d 967, 969 (Pa. Super. Ct. 2004) (citations omitted).

[18] ECF Doc. No. 52 ¶ 34. *See also Heyward v. City of Phila.*, 509 F. Supp. 3d 303 (E.D. Pa. 2020) (providing a fulsome analysis of Pennsylvania's post-conviction DNA testing statute).

[19] ECF Doc. No. 81-3 at Appendix 28.

[20] *Id.* at Appendix 27, 28.

[21] *See* Docket entries at 13.

[22] On March 4, 2020, we dismissed the Philadelphia Police Department with prejudice because it is not a proper defendant under 42 U.S.C. § 1983. ECF Doc. No. 9 at ¶ 6, n.2.

[23] Despite the pending PCRA motion seeking DNA testing, Mr. Heywood filed his civil rights action here on October 7, 2019. Mr. Heyward alleged he has a "state created liberty interest that only requires him to demonstrate his actual innocence in the context of post-conviction proceedings with appropriate evidence" and the loss of the lighter and other evidence in his criminal case prejudiced his attempt to show his actual innocence. We dismissed Mr. Heyward's first pro se complaint on January 8, 2020 seeking to proceed in forma pauperis after screening it under 28 U.S.C. § 1915(e)(2)(B)(ii), finding Mr. Heyward's success in this action necessarily implies the invalidity of his convictions which the state court had not found. *Heyward v. City of Phila., et al.*, No. 19-5469 ("*Heyward I*"), ECF Doc. No. 13. We have no record a Pennsylvania state court vacated Mr. Heyward's conviction. Mr. Heyward nevertheless filed a new complaint here at No. 20-530.

[24] ECF Doc. Nos. 14, 15.

[25] *Id.*

[26] ECF Doc. No. 20.

[27] ECF Doc. Nos. 23, 24.

[28] ECF Doc. No. 52 ¶ 37. Mr. Heyward also tangentially argues there are genuine issues of material fact precluding summary judgment including citing to the Eighth Amendment's prohibition on cruel and unusual punishment. He contends he entered an unlawfully induced plea after a coerced confession and the missing lighter prejudiced his defense. *See* ECF Doc. No. 83 at 8 (using the pagination supplied by the CM/ECF docketing system). Mr. Heyward's second amended Complaint does not plead an Eighth Amendment claim. In *Heyward I*, Mr. Heyward alleged the loss of the lighter deprived him of DNA testing violating his Eighth Amendment rights. *See Heyward I*, No. 19-5469, ECF Doc. No. 4 at 5. We dismissed the complaint in *Heyward I* after screening it under 28 U.S.C. § 1915(e)(2)(B)(ii) without prejudice to him filing a new lawsuit in

the event the state court vacates his conviction. ECF Doc. No 13. Mr. Heyward did not assert an Eighth Amendment claim before us.

[29] ECF Doc. No. 52.

[30] *Id.*

[31] ECF Doc. Nos. 54, 55.

[32] *Id.*

[33] ECF Doc. No. 46. We twice referred Mr. Heyward's case to the Prisoner Civil Rights Panel. ECF Doc. Nos. 25, 77. An attorney volunteered to enter her appearance in response to our second referral but we later granted her motion to withdraw based on her declaration "professional considerations require … [her to] withdraw as Mr. Heyward's counsel under Rule 1.16(a)(1)" of the Rules of Professional conduct. ECF Doc. Nos. 79, 80. Mr. Heyward did not contest counsel's motion to withdraw. ECF Doc. No. 79-3.

[34] ECF Doc. No. 48.

[35] ECF Doc. No. 50.

[36] Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.,* 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). "Summary judgment is appropriate only if, after drawing all reasonable inferences in favor of the non-moving party, there exists 'no genuine dispute as to any material fact' and the movant 'is entitled to judgment as a matter of law.'" *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 469 (3d Cir. 2021) (quoting *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 770 (3d Cir. 2018)). We do not weigh evidence or make credibility determinations. *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021) (quoting *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019)).

"The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Willis*, 808 F.3d at 643 (citing *Celotex Corp.*, 477 U.S. at 322-323).

---

[37] *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (quoting *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000)).

[38] *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (19896)).

[39] 488 U.S. 51, 57–58 (1988).

[40] *Id*. at 58. In *California v. Trombetta*, 467 U.S. 479 (1984), decided four years before *Youngblood*, the Supreme Court held the duty imposed by the Constitution on the States to preserve evidence "must be limited to evidence that might be expected to play a significant role in the suspect's defense." *Id.* at 488 (footnote omitted). To meet the standard of constitutional materiality, evidence must "both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 488–89. Under *Trombetta* and *Youngblood*, to prevail on a violation of due process claim based on police failure to preserve potentially exculpatory evidence, "a defendant must show: [1] that the potentially exculpatory nature of the evidence was apparent at the time of destruction or loss, …; [2] the lack of 'comparable evidence by other reasonably available means,' …; and [3] that the government acted in 'bad faith.'" *United States v. Henry*, 842 F. App'x 809, 814 (3d Cir. 2021) (quoting *Trombetta*, 467 U.S. at 489 and *Youngblood*, 488 U.S. at 58). Defendants' summary judgment motion does not argue the first two factors, focusing only on the "bad faith" factor.

[41] *Chavarriaga*, 806 F.3d at 222 (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

[42] Mr. Heyward initially sued the Officers in both their official and individual capacities. We dismissed Mr. Heyward's official capacity claims against the Officers. *See* ECF Doc. No. 54 at 6–7.

[43] *Rode*, 845 F.2d at 1207 (citing *Parrott*, 451 U.S. at 537 n.3).

[44] *Chavarriaga*, 806 F.3d at 222.

[45] ECF Doc. No. 52 ¶ 10.

[46] *Id.* ¶¶ 11, 12.

[47] *Id.* ¶ 13.

[48] *Id.* ¶¶ 10, 38, 42, 44.

[49] *Id.* ¶¶ 9, 53.

[50] ECF Doc. No. 81-3 at Appendix 30–31.

[51] *Id.* at Appendix 31.

[52] SUMF ¶ 5; ECF Doc. No. 81-3 at Appendix 20, 25.

[53] ECF Doc. No. 81-3 at Appendix 28.

[54] ECF Doc. No. 23.

[55] ECF Doc. No. 23 at 14.

[56] *United States v. Schaffer*, 777 F. App'x 581, 583 (3d Cir. 2019) (quoting *United States v. Deaner*, 1 F.3d 192, 200 (3d Cir. 1993)).

[57] ECF Doc. No. 81-3 at Appendix 27.

[58] *Id.* at Appendix 27.

[59] *Id.* at Appendix 28.

[60] *Trombetta*, 467 U.S. at 488.

[61] ECF Doc. No. 83 at 9 (emphasis added) (using the pagination supplied by the CM/ECF docketing system).

[62] *Youngblood*, 488 U.S. at 57–58.

[63] ECF Doc. No. 83 at 5 (using the pagination supplied by the CM/ECF docketing system).

[64] ECF Doc. No. 83 at 16, ¶ 10 (using the pagination supplied by the CM/ECF docketing system).

[65] ECF Doc. No. 83 at 24, ¶ 5 (emphasis added) (using the pagination supplied by the CM/ECF docketing system).

[66] ECF Doc. No. 83, Mr. Heyward's Additional SUMF ¶ 4.

[67] ECF Doc. No. 83 at 34–36 (using the pagination supplied by the CM/ECF docketing system).

[68] ECF Doc. No. 83 at 35.